## 67725. NEWS PUBLISHING COMPANY v. DeBERRY.

POPE, Judge.

This appeal comes from a jury verdict in the amount of $75,000 in favor of plaintiff/appellee Brondon E. DeBerry against defendant/appellant News Publishing Company d/b/a Rome News Tribune in an action for libel. On November 12, 1978, the date the article in question was published, DeBerry was deputy warden of the Floyd County Correctional Institution. In the article, the thrust of which was that state investigations of wrongdoing at the correctional institution had not been thorough, the following statement appeared: "Mr. DeBerry, upon seeing Mr. Knowles at the institution stated that he, Mr. DeBerry, was going to kill Mr. Knowles or have it done." At the time of the article, Roy Knowles was a Floyd County commissioner. The statement was attributed in the article to an affidavit given by a former inmate of the correctional institution whose name was withheld for fear of reprisal.

1. Appellant argues that the trial court erred in not granting its motions for directed verdict and for judgment notwithstanding the verdict because DeBerry did not meet his constitutional burden of proof in regard to showing actual malice in the publication of the alleged libel. At the beginning of the trial, the parties stipulated that DeBerry was a public official and would have to prove actual malice in order to recover.

A civil action for libel by a public figure or official against a newspaper requires clear and convincing proof that a defamatory falsehood alleged as libel was published with actual malice; that is, with knowledge that it was false or with reckless disregard of whether it was false or not. *Hemenway v. Blanchard*, 163 Ga. App. 668 (1) (294 SE2d 603) (1982); Curtis Publishing Co. v. Butts, 388 U. S. 130 (87 SC 1975, 18 LE2d 1094) (1967); New York Times v. Sullivan, 376 U. S. 254 (84 SC 710, 11 LE2d 686) (1964). "This heavy burden of proof is necessary to 'preserve() the balance between free debate on the one hand and compensation of individuals for harm inflicted by defamatory falsehood on the other.' [Cit.] Consistent with the strong societal interest in preserving free debate, an appellate court is required to examine the evidence with careful scrutiny. [Cits.]" Hunt v. Liberty Lobby, 720 F2d 631, 643 (11th Cir. 1983). "Absent an admission by the defendant that he knew his material was false or that he doubted its truth, a public figure must rely upon circumstantial evidence to prove his case. [Cit.]" Id. "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing

with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." St. Amant v. Thompson, 390 U. S. 727, 731 (88 SC 1323, 20 LE2d 262) (1968). "The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. . . . [R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." Id. at 732. "[W]hen an article is not in the category of 'hot news,' that is, information that must be printed immediately or it will lose its newsworthy value, 'actual malice may be inferred when the investigation for a story . . . was grossly inadequate in the circumstances.' [Cits.]" Hunt v. Liberty Lobby, supra at 643.

At trial DeBerry testified that he never made any threat on Knowles' life and that the charge in the article printed in appellant's newspaper was false. He further adduced evidence showing the following. The former inmate referred to in the article was identified as Larry Hight. The article in which appeared the charge that DeBerry had threatened the life of Knowles was in preparation for several weeks and was prepared by two reporters. It was an investigative piece with no set time for publication; appellant's newspaper had reported earlier on the state investigations of the correctional institution. On at least two occasions Knowles had attempted to have the county commissioners remove DeBerry from office but had failed.

The principal reporter for the article in question was Nanette Payne. She testified that she first learned of the charge that DeBerry had threatened Knowles from Knowles himself who told her that he had heard it from other people. Knowles gave Payne Hight's name as one of the individuals who had knowledge of the threats. Payne attempted to contact Hight by telephone at his job but could never reach him. She left several messages but her calls were never returned. She knew where Hight worked (in the local area) but never went to his place of employment to talk to him. She did not know where he lived and made no concerted effort to find out. Her impression was that Hight was reluctant to talk to a reporter. She advised Knowles that she could not use the information unless it was substantiated. Knowles arranged for Hight to come to the office of the attorney who represented both Knowles and Hight to sign an affidavit.

Before the article was published, no one connected with appellant's newspaper had seen Hight or talked with him either by telephone or in person. No one talked with anyone at the correctional institution or anyone else regarding Hight's reputation for reliability or truthfulness. No one checked Hight's criminal record. No one could remember any effort to ascertain from Knowles the names of the other individuals whom Knowles said could corroborate Hight's

accusation. Payne and the appellant had no source other than Hight's affidavit and Knowles for the charge. Payne had no knowledge of when the threat was supposed to have been made. Payne never talked with DeBerry regarding the allegations prior to publication of the article.

Thus, the evidence adduced provides clear and convincing evidence that obvious reasons existed for the appellant to doubt the veracity of the informant and the accuracy of his information. Hight was all but anonymous to appellant and its reporters. The fact that Knowles had attempted to have DeBerry fired on two occasions should have put the appellant on notice that Knowles might have bias and would readily give credence to an alleged threat by DeBerry against him. Failure to investigate further in these circumstances was sufficient evidence from which the jury could infer that recklessness in regard to truth or falsity which would demonstrate actual malice. The trial court did not err in denying appellant's motions for directed verdict and j.n.o.v.

2. Appellant argues that the court erred in admitting the opinion testimony of George Greiff, appellee's expert. Greiff was identified as a professor of journalism at Georgia State University with a 33-year career in newspaper reporting and editing. He testified to certain generally recognized minimum standards in journalism for the reporting of stories and then gave his opinion upon a hypothetical question. Appellant argues that there are no recognized journalistic standards and that Greiff's opinion invaded the province of the jury. We find neither argument persuasive. Greiff merely stated his opinion that the conduct described to him in the hypothetical question did not meet the standards to which he had earlier testified. He expressed no opinion whether the conduct so described would constitute actual malice. The court cautioned the jury before Greiff's testimony about expert testimony in general, and specifically cautioned the jury that Greiff's opinion would not be binding upon them. Therefore, we find no error in the admission of Greiff's testimony. See OCGA § 24-9-67; *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981); *King v. Browning*, 246 Ga. 46 (1) (268 SE2d 653) (1980); *Pembrook Mgt. v. Cossaboon*, 157 Ga. App. 675 (5) (278 SE2d 100) (1981).

3. Finally, appellant argues that the verdict must be reversed because the trial court incorrectly charged the jury that the burden of proof upon DeBerry was the preponderance of the evidence rather than the standard of clear and convincing proof required in libel cases involving public officials. In its initial charge to the jury, the court inadvertently gave both standards of proof to the jury; however, after this was pointed out by counsel, the court very clearly set out the proper standard in its recharge to the jury. " '(I)f it can be determined that the point at issue was presented in substantially . . . clear

and understandable a manner . . . keeping in mind that a jury is a lay audience, there should be no reversal where the language conveys correctly the intent of the law and is so framed as to be applied with understanding to the fact situation.' [Cit.]" *Haynes v. Hoffman*, 164 Ga. App. 236, 237 (296 SE2d 216) (1982). An examination of the charge and recharge shows that taken as a whole the law in regard to the proper burden of proof was amply set out. Nor do we find error in the court's refusal to submit to the jury the special verdict form requested by appellant. The submission of a special verdict is within the discretion of the trial court; absent an abuse of that discretion, the court's choice will not be overturned. See OCGA § 9-11-49; *Christiansen v. Robertson*, 139 Ga. App. 423 (5) (228 SE2d 350), revd. on other grounds, 237 Ga. 711 (229 SE2d 472) (1976).

*Judgment affirmed. Banke, P. J., and Benham, J., concur.*

DECIDED JULY 12, 1984 —
REHEARING DENIED JULY 27, 1984 — ▉▉▉▉▉▉▉

*Groze Murphy, Jr.*, for appellant.
*Christopher A. Frazier*, for appellee.